CLERK'S OFFICE U.S. DIST. COURT
AT CHARLOTTESVILLE, VA
FILED

OCT 0 7 2005

JOHN F. CORCORAN, CLERK
BY: /s/
    DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
CHARLOTTESVILLE DIVISION

| | |
|---|---|
| TAMELA A. MILLS, | CASE NO. 3:05CV00016 |
| Plaintiff, | |
| v. | REPORT AND RECOMMENDATION |
| JO ANNE B. BARNHART, Commissioner of Social Security, | By: B. Waugh Crigler U. S. Magistrate Judge |
| Defendant. | |

This challenge to a final decision of the Commissioner which denied plaintiff's April 7, 2000 claim for a period of disability, disability insurance and supplemental security income benefits under the Social Security Act (Act), as amended, 42 U.S.C. §§ 416, 423 and 1381 *et seq.*, is before this court under authority of 28 U.S.C. § 636(b)(1)(B) to render to the presiding District Judge a report setting forth findings, conclusions and recommendations for the disposition of the case. The question presented is whether the Commissioner's final decision is supported by substantial evidence, or whether there is good cause to remand the case for further proceedings. 42 U.S.C. § 405(g). For the reasons that follow, the undersigned will RECOMMEND that an Order enter REVERSING the Commissioner's final decision, GRANTING judgment to the plaintiff and RECOMMITTING the case for the sole purpose of calculating and paying proper benefits.

In a decision eventually adopted as a final agency decision, an Administrative Law Judge (Law Judge) noted that plaintiff previously had applied for benefits on July 29, 1996, and the October 1997 denial of which was affirmed by the United States District Court for the Western District of Virginia. (R. 19.) That denial was found to be *res judicata* for the period encompassed

in her original application for benefits, and the Law Judge, thus, determined plaintiff was not entitled to a finding that she was disabled prior to October 31, 1997. The instant claim alleging June 1, 1998 as the date of disability onset, though once more denied, had been remanded by the Appeals Council to another Law Judge for further proceedings. Following those supplemental proceedings, the latest Law Judge found that plaintiff, who was 41 years old with a high school education, one year's nursing training and past relevant work as a hospital staff nurse, a nurse for an oral surgeon, and as a dental assistant, met the special earnings requirements of the Act through March 31, 2001, but not thereafter. (R. 20, 31.) The Law Judge further determined that plaintiff suffered a peripheral neuropathy with related pain, which he found to be severe under the appropriate regulations, though not sufficiently severe to meet or equal any listed impairment. (R. 31.) Notwithstanding these findings, the Law Judge also determined that plaintiff did not suffer any impairment which produced physical or exertional limitations. (R. 18, 20.) He was of the view that plaintiff's allegations regarding the effects of her impairments were not totally credible and, though she was disabled from her past relevant work, he concluded from the evidence that she retained the residual functional capacity to perform less than a full range of sedentary work. (R. 31, 32.) By application of Rule 204.00 of the Medical-Vocational Guidelines ("grids") "as a framework," and by reference to a portion of the evidence adduced from a vocational expert (VE), the Law Judge found jobs were available to her, and that plaintiff was not disabled under the Act. (R. 32.) The Appeals Council denied review and adopted the Law Judge's decision as the final decision of the Commissioner. (R. 9-11.) This action ensued.

    Plaintiff has presented a number of contentions in her Combined Motion and Memorandum filed on August 29, 2005 ("Pl.'s Memorandum") supporting her complaint and motion for

summary judgment, all of which set forth the reasons why the court should reverse the Commissioner's final decision and enter judgment on her behalf. Summarized, plaintiff's key assertions are that the Law Judge's finding that plaintiff's allegation concerning the need to elevate her leg during the workday was "no more than a subjective limitation based upon the claimant's reports that she is more comfortable when allowed to elevate her leg," was not fully credible and not consistent with the medical evidence. This finding is neither supported by the applicable law nor by the substantial evidence in the record before the court. (R. 27, Pl.'s Combined Motion at 14-17, 19-23.) That these are at the heart of plaintiff's challenge is manifest. If plaintiff has the need to elevate her leg during the day, the clear and undeniable vocational evidence is that no jobs would be available in the economy to a person described by the Law Judge's hypothetical findings who must elevate her legs during the workday. (R. 587-588.)

Plaintiff first points out that the Commissioner's own operative rulings suggest a claimant's symptoms "will be determined to diminish" that person's work-related capacity "to the extent that the individual's alleged functional limitations and restrictions due to symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence in the case." Social Security Ruling (SSR) 96-7p. Plaintiff believes that the substantial medical evidence together with the evidence from non-medical sources, when viewed in the context of her actual consistent work history, overwhelmingly demonstrates her need to elevate her leg.

In this connection, plaintiff challenges the Law Judge's interpretation of the evidence offered by Haddon Alexander, M.D., the Commissioner's medical expert (ME), and the Law Judge's later reliance on that interpretation to the exclusion of all the other medical and lay evidence in the record, including treating and examining sources, to support his conclusion that

3

plaintiff's symptoms lacked credible support. 20 C.F.R §§404.1527(d)(2) and 416.927(d)(2), SSR 96-2p. It is plaintiff's position that, if the Law Judge's determination is considered either legally erroneous or unsupported by substantial evidence, and if plaintiff was found to have the need to elevate her legs, then the VE's testimony should compel a conclusion that plaintiff is disabled under the Act. Thus, plaintiff believes summary judgment on her behalf is appropriate.

Plaintiff further challenges whether there is substantial support for the Law Judge's determination that she suffered no severe mental impairment. Plaintiff points to the evidence offered by Robert Muller, Ph.D., the Commissioner's own consulting psychologist, who found plaintiff suffered a dysthymic disorder and major depression with a psychotic feature, as proof that plaintiff suffered at least a severe mental impairment under the regulations and applicable decisional authority. (R. 330-331.)

The Commissioner has quite a different view of the case as she explains in the Defendant's Memorandum in Support of Her Motion For Summary Judgment ("Def.'s Memorandum"). First, the Commissioner believes the Law Judge properly evaluated the medical evidence in the case. She reminds the court that, under the applicable regulations and operational rules, the assessment of plaintiff's residual functional capacity (RFC) and a determination of whether the plaintiff is disabled have been committed to her. Moreover, the Commissioner contends that under 20 C.F.R. §§ 404.1527 and 416.927 and SSR 96-5p, the evidence from treating sources is not entitled to any "special significance." Thus, she argues that it was permissible for the Law Judge to decline to give controlling weight or significance to the evidence offered by plaintiff's treating sources.

Interestingly, the Commissioner takes issue with the plaintiff's characterization of the Law Judge's description of the evidence presented by Dr. Alexander, the Commissioner's medical

expert (ME). After summarizing Dr. Alexander's testimony, the Commissioner concedes that Dr. Alenxander acknowledged the fact that the medical profession accepts the general notion of a connection between chemotherapy and neuropathic effects in cancer patients, but the Commissioner notes that the ME further testified to never having had a patient with a neuropathy caused by chemotherapy. Def.'s Memorandum at 20. Moreover, the Commissioner referred to the transcript and denies that Dr. Alexander ever offered venous insufficiency as "the" reason for any need to elevate plaintiff's leg, offering instead only "a" reason for that need. *Id.* at 21. Further, the Commissioner asserted that the ME testified that he did not find documentation showing a medical reason for why plaintiff was required to elevate her leg. *Id.*

The Commissioner offers that the law permits the use of a "neutral advisor, " such as a ME. She also believes the Law Judge properly credited this particular ME's opinions. In the end, the Commissioner takes the position that plaintiff's challenge to the materiality of Dr. Alexander's testimony concerning plaintiff's impairment and its effects were put to rest, mooted as it were, when the Law Judge found plaintiff suffered a severe neuropathic impairment. *Id.* The balance of the Commissioner's argument can be summarized as contending that the plaintiff's treating source opinions as to her need to elevate her legs either is not supported by any objective medical evidence or represents only a preference to provide for plaintiff's personal comfort rather than a statement of medical necessity. *Id.* at 21-23. Thus, the Commissioner takes the position that any need to provide for plaintiff's personal comfort does not rise to the level of a vocational limitation, and that the Law Judge's decision finding that no such vocational limitation was proven is supported by substantial evidence in the record.

The Commissioner also is of the view that the record evidence supports her adopted

5

decision that plaintiff's depressive disorder was not severe. The Commissioner points to the evidence from both treating and consulting sources that plaintiff had improved and was "doing well. (R. 23; Def's. Memorandum at 25-26.) The Commissioner also takes the position that the April 2002 report from David Silver, M.D., which showed moderate to marked limitations in certain areas, was not his assessment but simply the plaintiff's, and, in all events, that the report contradicts Dr. Silver's own prior treatment records. (Compare R. 410-427 with R. 431-432; Def.'s Memorandum at 26.)

In the instant case, plaintiff carried her initial burden in the sequential evaluation process by demonstrating the presence of a severe impairment that prevented her from performing her past relevant work. (R. 31, Findings 3 and 7.) 20 C.F.R. §§ 404.1520 and 416.920; *Hunter v. Sullivan*, 993 F.2d 31 (4th Cir. 1992). Whether plaintiff suffered just one or more than one severe impairment, the burden shifted to the Commissioner to demonstrate that alternate gainful activity was available to her, a burden the Commissioner could discharge in this case only by the presentation of vocational evidence because there is no dispute that there were non-exertional limitations on plaintiff's ability to perform work-related functions. *Hall v. Harris*, 658 F.2d 260 (4th Cir. 1981); *McLain v. Schweiker*, 715 F.2d 866 (4th Cir. 1983); *Coffman v. Bowen*, 829 F.2d 514 (4th Cir. 1987). For the testimony of a VE to be relevant, the VE is required to have considered all the substantial evidence in the record material to plaintiff's limitations and their effects on her work-related capacity. *Walker v. Bowen*, 889 F.2d 47 (4th Cir. 1989). Otherwise, the VE's testimony cannot be considered sufficient to discharge the Commissioner's sequential burden, and the plaintiff would be entitled to an award of benefits based on her unrebutted *prima facie* case.

The undersigned certainly agrees with the proposition that the Commissioner is charged with making the initial evaluation of the medical evidence, assessing symptoms, signs and findings, and with determining the functional capacity of the claimant. 20 C.F.R. §§ 404.1527-404.1545 and 416.927-945; *Hays v. Sullivan*, 907 F.2d 1453 (1990); *Shively v. Heckler*, 739 F.2d 987 (4th Cir. 1984). A reviewing court, therefore, should not second-guess the Commissioner's resolution of any conflicts in the medical evidence, though it must determine whether her decision in those respects is supported by substantial evidence in the record as a whole.

As alluded to above, the outcome of plaintiff's claim rests, in substantial part, on the nature and effects of plaintiff's peripheral neuropathy. Plaintiff also has raised a serious question about whether her depressive disorder is "severe" as that term is defined by the Act and regulations and as applied by the courts. There can be no debate on the current record that plaintiff's treating physician, Margaret Plews-Ogan, M.D., has revealed that plaintiff suffers the neuropathic effects of chemotherapy treatments she received for cancer. Those effects essentially exhibit themselves as pain in plaintiff's lower extremities, which Dr. Plews-Ogan believes is "a medical condition which could reasonably cause her to need to elevate her feet, and particularly her right foot, at least to waist level through the day to alleviate swelling in her lower extremity." (R. 433.)

In the prior proceedings, there was evidence submitted following a Department of Rehabilitative Services ("DRS" or "state agency") consultative examination by William Burrish, M.D. (R. 323-326.) The instant Law Judge acknowledged that this state agency examiner was of the view that plaintiff's "pain was consistent with a neuropathy," and that plaintiff likely could perform light duty or sedentary activity, "especially facilitated by a job that would allow her to elevate her foot occasionally to reduce the amount of edema and swelling." (R. 26, 326.) After

7

acknowledging this evidence, the Law Judge then gave Dr. Burrish's opinion "weight in the determination of the claimant's residual functional capacity." (R. 26-27.) However, and citing the testimony of the ME as the reason, the Law Judge found "no requirement" that plaintiff elevate her legs because "this [elevating her legs] is merely a subjective factor." (R. 27.)

What Dr. Alexander actually said was that he believed "the level of function . . . [resulting from plaintiff's neuropathy] is largely subjective. It's certainly deemed credible by *all* the examining treating physicians, in that the level of her pain management has been considerable with Methadone, Oxycodone, all heavy-duty medications. Apparently none having achieved maximum continual benefit." (R. 582 (emphasis added).) Dr. Alexander simply did not "find any documentation as to why the requirement's (sic) for the right leg elevation such as swelling of the foot." (R. 582-83.) When confronted with the treating physician's evidence relating to this need, Dr. Alexander essentially deflected the question by revealing his lack of anecdotal experience with chemotherapy induced neuropathies. (R. 583-584.)

In the undersigned's judgment, Dr. Alexander's evidence does not provide substantial support for the Law Judge's rejection of the need for plaintiff to elevate her legs as a vocational limitation. First, Dr. Alexander never says this is not a medical need or requirement; he only stated he could not find documentation to support the prescription for such. In addition, Dr. Alexander's opinion appears to the undersigned to be even more subjective than those he reviews in that there is less of an objective basis to support any conclusion from his statement that plaintiff does not have this need. Moreover, Dr. Alexander's own testimony reveals a compelling objective reason to give controlling weight to the treating and examining evidence over his, namely that "heavy-duty" treatment for plaintiff's pain had failed, leaving the only recourse being the provision of some

8

comfort for her during the day in the midst of her pain. Thus, the Law Judge's reliance on Dr. Alexander's opinion as a basis for his conclusion that plaintiff's ability to perform work-related activities is not limited by a need to elevate her foot or leg, is not supported by substantial evidence.

The undersigned believes that the Law Judge's finding that plaintiff's depression was not severe, likewise, is not supported by substantial evidence in view of the extant regulatory and decisional authority. The Law Judge's determination that plaintiff's impairment was in remission seems to have ignored considerable substantial evidence that her mental status fluctuated, almost in proportion to the amount of pain she was experiencing. (See Pl.s Memorandum at 19 citing R. 193-194, 373-397, 410, 413-414, 446, 451, 458, 504; see also R. 428-429.) When coupled with a report from the Commissioner's own consulting examiner, who found that plaintiff suffered a dysthymic disorder and major depression with a single psychotic episode (R. 330-331), it is difficult for the undersigned to see how her mental status falls short of being a slight abnormality having minimal effects on the plaintiff's ability to perform work-related activities, especially when considering the combined or synergistic effects of her physical malady. 20 C.F.R. §§ 404.1521, 1523 and 416.921 and 923; *DeLoatche v. Heckler*, 715 F. 2d 148 (4th Cir. 1983); *Evans v. Heckler*, 723 F. 2d 1012 (4th Cir. 1984).

When the VE considered the requirement for the plaintiff to elevate her legs as a vocational factor, she opined that "I'm not aware of any employers that would allow elevation of legs for that long a time." (R. 591.) In other words, when asked to consider this relevant vocational factor, as required under *Walker v. Bowen*, 889 F. 2d 47 (4th Cir. 1989), the VE foreclosed any otherwise available job. Thus, the Commissioner failed to carry her burden at the final level of the sequential

9

evaluation.

For these reasons, the undersigned RECOMMENDS that an Order enter REVERSING the Commissioner's final decision, GRANTING judgment to the plaintiff and RECOMMITTING the case for the sole purpose of calculating and paying proper benefits.

The Clerk is directed to immediately transmit the record in this case to the presiding United States District Judge. Both sides are reminded that pursuant to Rule 72(b) they are entitled to note objections, if any they may have, to this Report and Recommendation within (10) days hereof. Any adjudication of fact or conclusion of law rendered herein by the undersigned not specifically objected to within the period prescribed by law may become conclusive upon the parties. Failure to file specific objections pursuant to 28 U.S.C. § 636(b)(1)(C) as to factual recitations or findings as well as to the conclusions reached by the undersigned may be construed by any reviewing court as a waiver of such objection. The Clerk is directed to send a certified copy of this Report and Recommendation to all counsel of record.

ENTERED: /s/ *signature*
U. S. Magistrate Judge

Date: 10/7/05